**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12            IN THE UNITED STATES DISTRICT COURT

13         FOR THE NORTHERN DISTRICT OF CALIFORNIA

14

15    FAITH D MARTIN, et al,              No   C 06-6883 VRW

16            Plaintiffs,                 ORDER

17            v

18    FEDEX GROUND PACKAGE SYSTEM, INC,
      and DOES 1-10, inclusive,

19            Defendants.
      _____/

20

21            This wage and hour class action lawsuit involves claims

22    that defendant FedEx Ground Package System, Inc ("FedEx Ground")

23    failed to provide meal and rest periods to its hourly employees in

24    violation of California law.  The parties reached a settlement on

25    October 12, 2007, Doc #35, and the court now considers whether to

26    grant preliminary approval of the settlement.

27            On April 22, 2008, plaintiffs moved for: (1) leave to

28    file an amended complaint, (2) preliminary approval of the class

**United States District Court**

For the Northern District of California

action settlement, (3) conditional certification of the class for settlement purposes, (4) approval of the proposed form of notice, (5) establishment of an opt-out, objection and claim procedure and (6) scheduling of a hearing on final approval of the proposed settlement.  Doc #47.  On July 8, 2008, the court granted leave to file an amended complaint but denied preliminary approval based on its concerns with the proposed notice and the vague description of how class counsel calculated the settlement value.  Doc #62.  Class counsel filed a revised proposed notice, Doc #71 Exh 1, and further explanation of its calculations, Docs ##67-1,8; 71.  On December 18, 2008, the court held a hearing to determine whether the court's initial concerns were sufficiently satisfied to allow the court to grant preliminary approval.

    The proposed settlement appears to have been heavily negotiated, the product of an extensive mediation that proved satisfactory to the parties.  But satisfaction of the parties, although a necessary condition to settlement of a class action, is not sufficient.  Court approval hinges on a demonstration that the settlement is fundamentally fair.  See FRCP 23(e)(2); In re Syncor ERISA Litigation, 516 F3d 1095, 1100 (9th Cir 2008).  The court noted on July 8 that the proposed settlement had three major shortcomings: (1) the settlement appeared to be premised on certain assumptions about the class's missed meal and rest breaks, assumptions that may very well be reasonable, but assumptions the parties have failed to show are rooted in the evidence; (2) although the attorney fees requested appeared reasonable in relation to the amount of work counsel put into the case, the failure to substantiate the damages the class was likely to recover

made it impossible to conclude that the proposed attorney fee award was reasonable in relation to the benefit conferred on the class; and (3) the proposed form of notice omitted a material term of the settlement, the number of opt-outs that triggered the defendant's right to withdraw from the settlement.  Doc #62 at 2.

In response to the court's concerns, counsel submitted briefings and an affidavit describing how they had calculated the value of missed breaks.  Docs ##67-1,8; 71.  Counsel also revised the proposed notice to incorporate the court's recommended modifications.  Doc #71 Exh 1.

I

A

The parties' proposed settlement would terminate two actions, the above-captioned case and a separate case pending in the Orange County superior court, Olguin v FedEx Ground Package System, No OCSC 02CC0020.  Both cases are described below.

1

Plaintiff Faith Martin filed this action in the San Francisco superior court on September 20, 2006, against FedEx Ground, a large package delivery company with numerous distribution centers in California and throughout the United States.  Doc #1, Exh A.  On November 2, 2006, FedEx Ground removed the action to this court based on diversity jurisdiction.  Doc #1.  The case was assigned to former Judge Martin J Jenkins.  In anticipation of Judge Jenkins's resignation from office, on February 15, 2008, the case was reassigned to the undersigned.  Doc #39.

United States District Court

For the Northern District of California

1   Martin worked for FedEx Ground from December 2005 until
2   April 2006 as a non-exempt employee in a non-driver position at
3   FedEx Ground's Benicia/Vallejo terminal.  Doc #48 at ¶3.  Martin's
4   complaint, as originally filed, stated claims for compensation due,
5   failure to provide meal and rest periods in violation of Cal Lab
6   Code §§ 226.7, 512 and applicable wage orders, conversion, failure
7   to comply with itemized wage statement provisions under Cal Lab
8   Code § 226, penalties under Cal Lab Code § 203 and violations of
9   the unfair competition act, Cal Bus & Prof Code §17200, et seq.
10  Doc #1, Exh A at ¶¶16-49.  Martin's action was brought on behalf of
11  all individuals who were non-exempt California employees of FedEx
12  Ground from September 20, 2002 until the date of trial.  Doc #1,
13  Exh A at ¶12.  The conversion claim was dismissed by Judge Jenkins
14  on January 9, 2007.  Doc #12.

15  Martin has been represented at all times by Michael L
16  Carver and attorneys from his firm, the Law Offices of Michael L
17  Carver.  See Doc #58, Exh 4.

18

19                                      2

20  Plaintiffs Javier Olguin, Miguel Vargas and Kelly Freeman
21  filed their case in the Orange County superior court on July 18,
22  2002, and subsequently filed an amended complaint stating causes of
23  action for wages due, penalties under Cal Lab Code § 203, unfair
24  competition, accounting, injunctive relief and declaratory relief.
25  Doc #49 at ¶8.  The motion for class certification submitted in
26  that action indicates it was brought on behalf of all individuals
27  who were non-exempt California package handlers of FedEx Ground
28  from October 1, 2000 until the date of trial.  Doc #67-2 at Exh 1.

United States District Court

For the Northern District of California

Plaintiffs in the Orange County litigation are represented by Matthew Righetti and other attorneys from the Righetti Law Firm and Geoffrey Gega and other attorneys from the Cook Brown law firm.  See Doc #58 at ¶20; Doc #58, Exh 5 at ¶3. The Orange County plaintiffs' attorneys first appeared as counsel in the Martin action on April 16 and 21, 2008.  Doc ##43, 44.

Plaintiffs' counsel represents that the Orange County litigation was stayed on October 10, 2007.  Doc #49 at ¶16.  By that time, all pre-certification discovery in the Orange County litigation had been completed and a motion for class certification was about to be filed.  Doc #49 at ¶13.  According to plaintiffs' counsel, the judge in the Orange County litigation stated that he is amenable to having the settlement resolved in the district court and that he will dismiss the Orange County case without prejudice upon preliminary approval of the proposed settlement in this case. Doc #49 at ¶16.

B

Although the class periods are different and the Orange County action was brought on behalf of just California package handlers (as opposed to all non-exempt employees in California), the claims in both this action and the Orange County action present the same factual and legal issues.

In California, employees who work more than five hours per day are entitled to a meal period of "not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee."  Cal Lab Code § 512(a).

United States District Court

For the Northern District of California

In addition, employees who work over 3.5 hours per day must receive a minimum of a ten-minute rest break for each four-hour work period, or major fraction thereof.  Industrial Welfare Commission Wage Order 9-2001 at §§ 11-12, available at http://www.dir.ca.gov/IWC/WageOrderIndustries.htm (visited December 17, 2008).  If an employer fails to provide a required meal or rest period, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.  Cal Lab Code § 226.7.

Plaintiffs in both actions allege that FedEx Ground did not provide its employees with meal and rest periods as required by law.  According to plaintiffs, their primary duties were related to processing packages through terminals and hubs; they were expected to be at work stations along conveyor belts at all times the belts were moving.  The plaintiffs allege that in many instances, FedEx Ground did not shut down the conveyors to allow employees an opportunity to take their meal or rest periods.  Doc #67 at 6. Plaintiffs also allege that in 2004, after this lawsuit was filed, FedEx Ground began stopping the conveyor belts at certain times to facilitate employees' breaks.  Id.  FedEx Ground has asserted a variety of defenses and denies all wrongdoing.  Doc #49 at ¶11.

II

A

Under the proposed settlement, the class is defined as:

(1) Class No 1: All California FedEx Ground package handlers who held their positions at FedEx Ground anytime between October 1, 2000 and the date preliminary approval

United States District Court

For the Northern District of California

> **of this Settlement is granted, and (2) Class No 2: all California FedEx Ground non-package handler non-exempt employees who held their positions at FedEx Ground anytime between September 20, 2002 and the date preliminary approval of this Settlement is granted.**

**Doc #50, Exh A at 2:11-16.**

**FedEx Ground agrees to pay a maximum settlement sum of $8,125,000 to settle all claims of the class, although the maximum settlement may increase under certain circumstances described below.  Doc #50, Exh A at 10:22-24.  According to the proposed settlement, the payout fund will be reduced by plaintiffs' requested attorney fees of $2,681,250 (33 percent of the maximum settlement sum), litigation costs not to exceed $75,000, administration costs estimated at $250,000 and plaintiffs' incentive awards estimated at $40,000.  Doc #50, Exh A at 12:8-14. At the June 19, 2008 hearing on the proposed settlement, the parties informed the court that Gilardi & Co has been selected as the claims administrator and that administration costs are now estimated at $180,000.  Doc #61 at 13:19-14:5.**

**After deduction of estimated costs, the maximum payout available to class members under the proposed settlement is $5,148,750.  Under the proposed plan of allocation, the payout fund will be divided by the number of workweeks actually worked by all class members during the class period to determine a "workweek rate."  Doc #50, Exh A at 12:24-27.  Each plaintiff who returns a valid claim form will become a "settlement class member" and will be entitled to a share of the payout funds.  Doc #50, Exh A at 13:6-8.  Each settlement class member will receive a payment equal to the workweek rate times the number of workweeks that he or she was a class member.  If 48 percent of the maximum payout funds are**

**7**

United States District Court

For the Northern District of California

not claimed by settlement class members, then settlement class members will receive the difference between the amount claimed and 48 percent of the maximum payout funds on a proportional basis. Doc #50, Exh A at 13:8-11.  In other words, assuming the cost estimates above are correct, FedEx Ground will pay at least $2,471,400 (48 percent of $5,148,750) to class members regardless how many claims are submitted.  Any payout funds not paid to settlement class members revert to FedEx Ground.  Doc #50, Exh A at 13:21-22.

In reaching the settlement, FedEx Ground estimated that the number of workweeks worked by class members during the class period up until October 31, 2007 is 1,049,174.  FedEx estimated that 5,600 additional workweeks would be worked by class members each week after October 31, 2007.  Doc #50, Exh A at 13:27-14:5. If the actual number of workweeks during the class period exceeds the estimate by more than ten percent, then the maximum payout figure will be divided by the estimated number of workweeks, rather than the actual figure, to determine the workweek rate.  The payout to settlement class members will be calculated by multiplying the workweek rate by the number of workweeks actually worked by the settlement class member.  Doc #50, Exh A at 14:19-24.  Under these circumstances, if enough class members submit valid claims, the maximum settlement sum could exceed $8,125,000.  Plaintiffs' counsel estimate that settlement class members will receive approximately $200 per year worked.  Doc #49 at ¶19; Doc #68 Exh 1 at 3.

United States District Court

For the Northern District of California

**B**

In this case, the court finds that the procedure for reaching this settlement was fair and reasonable and that the settlement was the product of arms-length negotiations.  Each of the three groups of lawyers representing plaintiffs are led by attorneys with substantial experience in wage and hour class actions.  Doc #49 at ¶3, Doc #48 at ¶8, Doc #52 at ¶¶15-16.  FedEx Ground was represented during negotiations by experienced counsel as well.  Doc #49 at ¶10.  Settlement occurred after extensive discovery in the Orange County litigation, and discovery was conducted in the Martin case as well.  A day-long JAMS mediation session was held before a retired judge, followed by months of subsequent negotiations.  Doc #49 at ¶15.

Perhaps because of the highly negotiated nature of the settlement, the court on July 8 noted that the settlement itself failed to spell out some of the settlement's underlying assumptions, including how counsel arrived at the estimated value of plaintiffs' claims.  Doc #62 at 9.  Having reviewed counsel's further submissions explaining those underlying assumptions, Docs ## 67;71, the court is now satisfied that it understands the value of the settlement for the class members.

Extensive discovery was conducted in the Orange County litigation.  The parties served and answered ten sets of interrogatories, twelve sets of document requests and nine sets of requests for admission.  Approximately 46 depositions were taken.  Doc #49 at ¶12.  Discovery was conducted in the Martin case as well, including three on-site facilities inspections and review by the plaintiff's counsel of tens of thousands of pages of discovery

**United States District Court**

For the Northern District of California

material provided by FedEx Ground.  Doc #49 at ¶12.

Based on this discovery, plaintiffs' counsel have estimated potential damages in this case.  Specifically, counsel estimated that approximately 77 percent of total shifts worked were 3.5 hours or longer, making them eligible for rest breaks, and that 5 percent of shifts were over six hours, making them eligible for meal periods. Doc #67-8 at ¶3.  Further, based on interviews with class members, counsel estimated a rest period compliance rate at 50 percent for shifts worked through 2002 and an increasing rate of compliance to approximately 95 percent in 2004.  Id at ¶5.  Using data provided by FedEx Ground, counsel determined that the compliance rate for meal breaks was approximately 45 percent throughout the class period.  Id at ¶10.  With these percentages and the number of workweeks during the class period, counsel estimates the value of missed rest periods at $4,920,496 and missed meal periods at $1,086,384 for both classes for a total of $6,006,844.  Doc #71 at ¶15.  The potential interest value amounts to an additional $2.2 million.  Id.  Thus, counsel estimate the total potential damages for both classes to be $8,206,844.  The court is satisfied that these numbers represent a reasonable damages calculation based on the evidence available to counsel.

C

Plaintiffs' counsel seek an award of attorney fees in an amount not to exceed $2,681,250, plus litigation costs not to exceed $75,000.  Doc #50, Exh A at 11:2-5.  If the entire maximum settlement of $8,125,000 is paid, the requested fee award represents 33 percent of the settlement.

**United States District Court**
For the Northern District of California

"Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" <u>Staton v Boeing Co</u>, 327 F3d 938, 963 (9th Cir 2003), quoting FRCP 23(e). The court is obligated to conduct an independent inquiry into the reasonableness of any attorney fee provisions of a class action settlement even in the face of an agreement between the parties regarding the payment and amount of attorney fees and costs.

Common fund cases create a situation in which normal reliance on the adversary process to police the appropriateness of a fee award is unavailing. <u>Report of the Third Circuit Task Force, Court Awarded Attorney Fees</u> (<u>Task Force Report</u>), 108 FRD 237, 251 (3rd Cir 1985). The prospect of a sizeable attorney fee award can drive a wedge between the class and class counsel, the former interested in the largest settlement obtainable for the class and the latter in the largest fee award obtainable. Unsurprisingly, a class action defendant has little or no incentive to contest the amount allocated to attorney fees in a proposed settlement, provided the total amount of the settlement is acceptable. "Since the defendant is interested only in the total size of its liability, so long as the settlement is accepted, it will often be indifferent as to the division of the fund between the plaintiffs' recovery and the attorneys' fees." <u>Task Force Report</u> at 266.

"[T]o avoid abdicating its responsibility to review the agreement for the protection of the class, the Ninth Circuit requires that a district court must carefully assess the reasonableness of a fee amount spelled out in a class action

United States District Court
For the Northern District of California

settlement agreement." <u>Staton</u>, 327 F3d at 963 (citations omitted).

"In 'common fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." <u>Hanlon v Chrysler Corp</u>, 150 F3d 1011, 1029 (9th Cir 1998). Although this court's practice is to use the lodestar method, the court notes that the requested fee of $2,681,250 represents at least 33 percent of the total settlement and possibly more; in other words, it is well above the 25 percent benchmark that the Ninth Circuit uses in common fund cases. See <u>Hanlon</u>, 150 F3d at 1029. This may inform the court's analysis of whether the multiplier implied by counsel's lodestar figure is reasonable.

Plaintiffs' counsel have submitted data on their own stated hourly rates, but the court prefers to calculate the lodestar figure using published data on hourly rates. Standardized hourly rates result in a meaningful comparison among multipliers in various cases. If the standardized rates are lower than actual rates billed by attorneys, then a comparison of multipliers in many cases will indicate a higher standard multiplier. Thus, counsel need not worry whether the standardized rates reflect their actual billing practices; the court seeks only to compare lodestar multipliers calculated at the same standardized hourly rates across many common fund cases.

A widely recognized compilation of attorney and paralegal rate data is the <u>Laffey</u> matrix, so named because of the case that generated the index. In <u>Laffey v Northwest Airlines, Inc</u>, 572 F Supp 354 (DDC 1983), aff'd in part, rev'd in part on other grounds, 746 F2d 4 (DC Cir 1984), the court employed a variety of hourly

billing rates to account for the various attorneys' different

levels of experience.  The <u>Laffey</u> matrix has been regularly

prepared and updated by the Civil Division of the United States

Attorney's Office for the District of Columbia and used in fee

shifting cases, among others.  See

http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix

_3.html, visited December 17, 2008.  The <u>Laffey</u> matrix is

especially useful when the work to be evaluated was performed by a

mix of senior, junior and mid-level attorneys, as well as

paralegals, as is typically the case in class action litigation.

Under the 2007-2008 <u>Laffey</u> matrix, attorneys bill at the

following rates according to experience:

| **Experience** | **Rate Per Hour** |
|---|---|
| 20+ Years | $440 |
| 11-19 Years | $390 |
| 8-10 Years | $315 |
| 4-7 Years | $255 |
| 1-3 Years | $215 |
| Paralegals & Law Clerks | $125 |

These figures are, however, tailored for the District of

Columbia, which has a different cost of living than San Francisco,

Chico and Santa Ana, California (the cities in which plaintiffs'

counsel operate).  Accordingly, some adjustment appears appropriate

here.  To make the adjustment, the court will use the federal

locality pay differentials based on federally compiled cost of

living data.  See http://www.opm.gov/oca/08tables/indexGS.asp; <u>In

re HPL</u>, 366 F Supp 2d 912, 921 (ND Cal 2005)(Walker, J)(adjusting

locality pay differentials based on the geographical region in

13

**United States District Court**
For the Northern District of California

which lead counsel's firm operated).  A review of the pay tables shows the Washington-Baltimore area has a +20.89 percent locality pay differential; the San Francisco area ("SF") has a +32.53 percent locality pay differential; the Sacramento (Chico)("CH") area has a +20.25 percent locality pay differential; and the Los Angeles (Santa Ana)("SA") area has a +25.26 percent locality pay differential.  Adjusting the <u>Laffey</u> matrix figures accordingly will yield appropriate rates for the respective geographical regions: +9.6 percent for San Francisco, -0.5 percent for Chico and +3.6 percent for Santa Ana.

Applying these adjustments the court obtains the following rates:

| <u>Experience</u> | San Francisco Hourly Rate | Chico Hourly Rate | Santa Ana Hourly Rate |
|---|---|---|---|
| 20+ Years | $482.24 | $437.80 | $455.84 |
| 11-19 Years | $427.44 | $388.05 | $404.04 |
| 8-10 Years | $345.24 | $313.43 | $326.34 |
| 4-7 Years | $279.48 | $253.73 | $264.18 |
| 1-3 Years | $235.64 | $213.93 | $222.74 |
| Paralegals & Law Clerks | $137.00 | $124.38 | $129.50 |

The following table reflects the court's adjusted lodestar calculations for attorneys and paralegals working on the case.  See Doc #58 at Exh 2, 4 and 5.

14

| Attorney/ Paralegal | Location | Years Experience | 2007- 2008 Laffey Rate | Total Hours | Total Lodestar |
|---|---|---|---|---|---|
| Carver, M | CH | 14 | $388.05 | 289.9 | $112,495.70 |
| Gega, G | SA | 28 | $455.84 | 483 | $220,170.72 |
| Glugoski, J | SF | 11 | $404.04 | 738 | $298,181.52 |
| Johnson, K | SA | 7 | $264.18 | 10.05 | $2,655.01 |
| Jose, A | SA | 10 | $326.34 | 2.9 | $946.39 |
| Lamb, E | CH | 1 | $213.93 | 24.4 | $5,219.89 |
| Lunde, M | CH | Paralegal | $124.38 | 22.2 | $2,761.24 |
| Maechtlen, L | SA | 5 | $264.18 | 116.9 | $30,882.64 |
| McCabe, T | SA | Paralegal | $129.50 | 53.2 | $6,889.40 |
| McGeorge, J | SA | 6 | $264.18 | 23.4 | $6,181.81 |
| Mesnier, J | SA | 27 | $455.84 | 1 | $455.84 |
| Patko, L | SA | 3 | $222.74 | 152.75 | $34,023.54 |
| Payne, S | SA | 9 | $326.34 | 7.6 | $2,480.18 |
| Righetti, M | SF | 23 | $482.24 | 1,112 | $536,250.88 |
| Sakai, K | SA | 8 | $326.34 | 244.6 | $79,822.76 |
| Savage, P | CH | 4 | $253.73 | 87.7 | $22,252.12 |
| Silva, R | SA | 14 | $404.04 | 1102.95 | $445,635.92 |
| | | | Totals | 4,473 | $1,807,306 |

First, it appears that, given the extensive discovery conducted in this case and the fact that the figures above reflect the labor of attorneys in two separate lawsuits – one pending in this court since September 2006 and the other pending in the Orange County superior court since July 2002 – it is reasonable that the attorneys in this case have spent 4,473 hours working on it.

The court now turns to the lodestar cross-check, which entails evaluation of the multiplier implied by lead counsel's

**United States District Court**
For the Northern District of California

requested fee ($2,681,250) and lead counsel's lodestar fee
(computed above as $1,807,306).  The lodestar calculation under the
<u>Laffey</u> methodology results in a multiplier of 1.48
(2,681,250/1,807,306 = 1.48).  This multiplier falls below the
range the court has, in its experience, encountered and observed in
other common fund class actions.  See, e g, <u>Van Vranken v Atlantic
Richfield Co</u>, 901 F Supp 294, 298 (ND Cal 1995)(Williams,
J)("Multipliers in the 3-4 range are common in lodestar awards for
lengthy and complex class action litigation.").

By the lodestar cross-check, the requested fee award
looks reasonable, indeed on the low side.  Measured by the Ninth
Circuit's benchmark, the proposed fee award looks high.  The court
is satisfied, however, that the award is not unfair.  Lead counsel
was able to obtain a settlement value ($8,125,000) that closely
resembles the total estimated damages, including interest
($8,206,844).  Doc #71 Exh 1 at 2.  Further, class counsel faced a
risk of non-recovery at the outset of the litigation, as class
certification is sometimes difficult to obtain in wage and hour
cases.  See <u>White v Starbucks Corp</u>, 497 F Supp 2d 1080, 1081 (ND
Cal, 2007)(Walker, J).  Because the lodestar cross check revealed a
relatively low multiplier of 1.48, the court is satisfied that
counsel's requested fee award is not unreasonable.


D

The court must ensure that the notice sent to class
members is the best practicable under the circumstances.  FRCP
23(c)(2)(B).  In its July 8 order, the court listed some of its
concerns with the proposed notice.  Specifically, the court noted

16

United States District Court
For the Northern District of California

that the notice: (1) did not explain the basis for class counsel's estimate of class damages, state the total damages available if the case went to trial, or give an estimate of a typical class member's recovery under the proposed settlement; (2) did not notify class members that if eight percent of class members choose to opt out, FedEx Ground has the option to withdraw from the settlement; (3)did not state that the claims administrator will make a final, binding determination of individual award amounts; (4) required class members submit written notice before appearing at the final settlement hearing.  Doc #62 at 20.

Class counsel amended its proposed notice to address each of the court's concerns.  The revised notice contains a short description of how class counsel calculated total potential damages as well as a statement that the settlement amount of $8,125,000 is comparable to potential damages of $8,206,844.  Doc #71 Exh 1 at 2. The revised notice also indicates that a typical class member's recovery will be approximately $200, but that the claims administrator makes the final determination of all awards.  Id at 3.  The revised notice states that if eight percent of class members opt out of the settlement, FedEx Ground can decide to terminate the settlement. Id at 4.  Finally, the proposed notice no longer requires class members submit a written notice before being heard at the final settlement approval hearing.  Doc #68.

Because class counsel addressed each of the court's concerns, the court is satisfied that the revised notice adequately apprises class members of their rights under the settlement.

**E**

Next, the court turns to the parties' motion to establish an opt-out, objection and claim procedure and schedule a hearing on final approval of the proposed settlement.  The parties' proposed procedure is described in the settlement agreement, Doc #50, Exh A at 22:22-24:2, 25:12-28:7, and in the proposed notice of settlement, Doc #50, Exh A-1 at 3,6.  The parties have established a timetable with tentative dates to complete the settlement approval process; however, these dates may need to be revised following the court's preliminary approval.  Doc #71 ¶18.

Under the proposed procedure, the notice and claim form will be sent to class members in a single mailing.  Doc #50, Exh A at 21:3-7.  Class members who want to opt out of the class must submit a written request for exclusion no later than 45 days after the date of the first mailing of the notice or 30 days after the date of re-mailing of the notice, if any.  Doc #50, Exh A at 23:19-22.  Plaintiffs who wish to object to the settlement may file and serve a written objection or may simply appear at the fairness hearing.  Doc #50, Exh A at 22:23-23:4; Doc #68.

Class members who wish to claim an award must submit the claim form no later than 45 days after the date of the first mailing of the notice or 30 days after the date of re-mailing of the notice, if any.  Doc #50, Exh A at 25:12-22.  The proposed claim form was filed as Doc #68 Exh 2.  The court finds that the procedures proposed by the parties are for the most part fair and reasonable.  Because the parties no longer require class members to submit a notice before appearing at the fairness hearing, the court now grants the motion to approve the proposed opt-out, objection

18

and claim procedure.

F

Finally, the court turns to the parties' request for certification of a settlement class.  The proposed definition for the class is as follows:

> (1) Class No 1: All California FedEx Ground package handlers who held their positions at FedEx Ground anytime between October 1, 2000 and the date preliminary approval of this Settlement is granted, and (2) Class No 2: all California FedEx Ground non-package handler non-exempt employees who held their positions at FedEx Ground anytime between September 20, 2002 and the date preliminary approval of this Settlement is granted.

Doc #50, Exh A at 2:11-16.

On July 8, the court noted that the putative class meets the numerosity, typicality and adequacy requirements of FRCP 23(a). The court also found, pursuant to FRCP 23(b)(3), that common questions of law and fact predominate over individual questions and that class treatment of this matter is superior to any other available means of adjudication.  The court noted that it was prepared to certify the class for settlement purposes at the time problems with the settlement and proposed notice were resolved.

On July 22, 2008, however, the California court of appeal issued its opinion in <u>Brinker Restaurant Corp v Hohnbaum</u>, 80 Cal Rptr 3d 781 (4th Dist 2008).  The court in <u>Brinker</u> overturned the trial court's grant of class certification for claims dealing with missed rest breaks, because under California law employers do not need to ensure employees take rest breaks and thus whether an employee decided to waive a rest break amounts to an individualized

United States District Court

For the Northern District of California

1 inquiry.  80 Cal Rptr at 800-01.  The California Supreme

2 Court granted review, rendering _Brinker_ not citable in state

3 court.  Cal Rules of Court, Rule 8.1115.  Nonetheless, the

4 court feels constrained to address whether _Brinker's_

5 reasoning should guide the court here.

6        _Brinker_ dealt with a class of restaurant workers,

7 many of whom relied on tips for their wages and who may not

8 have wanted to take a break in the middle of a lucrative

9 shift.  80 Cal Rptr at 809-10.  The _Brinker_ court noted that

10 an individual inquiry into whether an employee had chosen to

11 skip a break or an employer had prevented him from taking a

12 break would be required.  Id.  In contrast, the California

13 court of appeal upheld certification of a class in a case in

14 which the employer had allegedly not provided employees with

15 meal breaks.  _Cicairos v Summit Logistics, Inc_, 133 Cal App

16 4th 949 (3rd Dist 2005).  The court in _Cicairos_ found a group

17 of truck drivers to be a class because the drivers alleged

18 their employer had not offered them meal breaks and indeed

19 had encouraged them to make deliveries in a time frame

20 incompatible with taking a break.  133 Cal App 4th at 962-64.

21 _Brinker_ distinguished _Cicairos_ as follows: "breaks must be

22 provided, not ensured."  80 Cal Rptr at 809.  If employees

23 allege common employer action that prevented employees from

24 taking breaks, under _Cicairos_ the employees can be certified

25 as a class.

26        FedEx employees in this case allege that FedEx kept

27 conveyor belts running at all times during their shifts,

28 which effectively prevented them from taking a break.  Doc

United States District Court

For the Northern District of California

1  #67 at 6.  Because FedEx employees allege facts to suggest

2  that FedEx Ground prevented employees from taking breaks, the

3  court is satisfied that the logic of <u>Brinker</u> does not affect

4  settlement class certification in this case and would not do

5  so if ultimately <u>Brinker's</u> reasoning is upheld by the

6  California Supreme Court.  Accordingly, the court certifies

7  the settlement class pursuant to FRCP 23.

8         The court must also determine whether counsel and

9  named plaintiff can adequately serve the interests of the

10 class for settlement purposes.  To make this determination,

11 the court looks to whether named plaintiffs and counsel have

12 any conflicts of interest with other class members and

13 whether named plaintiffs and counsel will fairly, vigorously

14 and competently prosecute the action on behalf of the class.

15 <u>Lerwill v InFlight Motion Pictures, Inc</u>, 582 F2d 507, 512

16 (9th Cir 1978).  The court is satisfied that no potential

17 conflicts of interests have been raised and that counsel have

18 vigorously litigated this action from the outset.  Thus, the

19 court certifies plaintiff and counsel as lead plaintiff and

20 class counsel for settlement purposes.

21

22

23

24

25

26

27

28

21

**United States District Court**
For the Northern District of California

IV

For the reasons discussed above, the court GRANTS
the motions for preliminary approval of the settlement,
conditional certification of the class for settlement
purposes, approval of the proposed form of notice and
approval of the proposed opt-out, objection and claim
procedure.


IT IS SO ORDERED.

_____
VAUGHN R WALKER
United States District Chief
Judge